AMY V. SHAW, appellant from decree of judge of probate, appointing an administrator of estate of William Shaw.

LLEWELLYN POWERS, appellant from same.

LLOYD B. CLARK, appellant from same.

Penobscot.   Opinion January 14, 1889.

*Probate.   Jurisdiction.   Appeal.   Adjudication.   Deceased Partner.   Assignment.   R. S., c. 63, §§ 6, 7, 29; c. 64, § 1; c. 65, § 13; c. 69, § 1; c. 71, § 23.*

Where the jurisdiction of the probate court, to issue letters of administration, is drawn in question, and it appears that the property interests of the appellants are directly affected by the decree of that court, they have the right of appeal.

Though it might not be proper to affirm or reverse a decree of the probate court, void upon its face, yet where its jurisdiction in granting administration depends upon the question, whether the deceased left a certain amount of assets, the court must examine the fact, as proved, before it can decide the question of jurisdiction.   This question can not be raised except by appeal; nor would a denial of jurisdiction in the probate court be a *felo de se.*

The appointment of an administrator, who never qualified, nor entered upon his duties, is not a conclusive adjudication of the question of the jurisdiction of the probate court to grant administration, upon a subsequent petition,—it appearing that the issue is not the residence of the intestate, but the location and the amount of property.   This was changeable, and the court might then have had jurisdiction, and not now.

Where the right to grant administration, upon the estate of a deceased member of a partnership, depends on the question whether there was as alleged, and at the time alleged, in the county, the required amount of property which could be legally used as assets of the deceased,—it appearing that all the personal property belonged to the firm, and with its real estate was insufficient to pay the debts of the firm; *Held,* that the intestate had no such interest, in the personal property, which could be administered upon as his estate; *Also, held,* that although there was sufficient real estate in the county, the record title of which was in the name of the deceased, but

all paid for by partnership funds, and purchased for partnership purposes it was, therefore, held in trust for the firm and could not be used for the payment of private debts. It was subject to the jurisdiction of a court of equity, rather than a court of probate.

The same result follows, from an agreement in the articles of copartnership requiring all real estate, so held by any member of the firm, should be held in trust for the firm.

R. S., c. 64, § 1, gives the probate court no authority to appoint an administrator for a partnership, or for a deceased partner, that he may act for the partnership. It prohibits the granting of an administration upon the individual estate of the partner, in all cases, unless the deceased left the prescribed amount of property.

An administrator appointed upon the estate of a deceased partner, of a foreign partnership, under R. S., c. 69, § 1, cannot take possession of the assets of the partnership until its dissolution.

An agreement in articles of copartnership for its continuance, after the decease of one or more of its members, is valid; and, by virtue of it, the partnership may continue until it expires by limitation, or dissolution by insolvency.

A foreign partnership, having such an agreement in its articles of copartnership, doing business in this state, where it owned real and personal property, continued business after the death of one of the partners, and made an assignment for the benefit of its creditors of all its property, situate here and elsewhere. *Held*, that the same act which dissolved the partnership, disposed of its property, by virtue of the assignment, and rendered the appointment of an administrator of the estate of the deceased partner unnecessary; and took from the probate court its jurisdiction to appoint one, if it otherwise had any.

Whether, under these facts, the rights of resident creditors to attach were affected, the court deem it unnecessary, in this case, to determine.

ON REPORT. The law court were to pass such decree, upon the legally admissible evidence, as the judge of probate ought to have passed, remit the case to the probate court for further proceedings, or take any order therein that law and justice required.

This was an appeal from a decree of the probate court, for Penobscot county, appointing an administrator upon the estate of William Shaw, deceased, on the petition of Sprague Adams and others, claiming to be creditors of said Shaw, filed in that court October 25, 1887.

Appellant Clark, filed the following reasons of appeal:

1. Because the deceased William Shaw aforesaid, was at the time of his death and long before a citizen of Massachusetts, where he died, and your appellant being a resident of that state was

there duly appointed administrator of his estate, which trust he still holds, and if any property exists in Maine belonging to his estate its administration should properly be committed to this appellant or to one ancillary to that, as otherwise great confusion and injury may ensue to the prejudice of the estate and general settlement of the whole.

2. Because the said probate court had no jurisdiction to appoint an administrator as prayed for, there being no property to administer nor any debts to be paid by any administrator appointed under, and in accordance with the prayer of said petitioners.

3. Because said deceased had not at the time of his death any personal estate, of the value of twenty dollars, within said county or state of Maine to be administered upon, nor has any property since his death existed in this state belonging to his estate.

4. Because at the time of his death said deceased did not owe debts to the amount of twenty dollars to said petitioners, or any of them, nor to any or all others, as contemplated by law, to authorize such administration, nor did he leave any real estate of that value in the state.

5. Because at the time of his death any and all interest in any estate, standing in his name, was no part his to be separately administered upon, but was wholly the property of the firm of F. Shaw & Brothers, and subject to the disposal and control of the surviving members thereof, by virtue of a trust created by said deceased, during his lifetime; that in pursuance of said trust all the property thus nominally in the name of said deceased was, by said survivors, subsequently conveyed and disposed of to F. A. Wyman, and the same became afterwards wholly the property of Charles W. Clement, trustee, to whom conveyance was made, including all right, legal and equitable, in all estate of every kind in which said deceased had any interest of any kind, and that long since said conveyances were by due process confirmed by the supreme judicial court in equity and adjudged legal and binding; and by special decree of said court all such nominal or other apparent interest of said deceased was, by special master, conveyed to said Clement, leaving nothing to be administered upon.

6. Because in reliance upon the conveyances and decrees

aforesaid your appellant has since made large purchases of property formerly belonging to said firm, and included within the premises conveyed as aforesaid to said Wyman, and afterwards to said Clement, the value and amount payable therefor exceeding fifty thousand dollars, the largest portion of which has been paid and notes for the balance given, all which property is sought by petitioners as included within the estate to be administered upon, whereby if administration be granted said title may be unfavorably affected, if not totally destroyed.

The appellants Amy V. Shaw, widow, and Llewellyn Powers, claiming to be aggrieved, filed reasons of appeal as follows:

First. Because said Sprague Adams and James Adams, copartners under the name of S. & J. Adams, and Edwin Belden, the petitioners in said probate court, for the appointment of an administrator as aforesaid, were not, nor were either of them, creditors of said William Shaw at the time of his decease.

Second. Because said Belden, in April, 1884, proved his claims, the same stated in his petition in said probate court for the appointment of administrator as aforesaid, in the supreme judicial court of Massachusetts, in the proceedings in a cause therein, to wit: the Globe Bank of Boston v. Ferdinand A. Wyman, trustee and assignee under the assignments for the benefit of creditors of F. Shaw & Brothers, of Boston, and by reason of said proof of claims and his acts, is barred from asking or petitioning for administration of the estate of William Shaw in said county of Penobscot.

Third. Because said William Shaw, at the time of his death, was not a resident of said county of Penobscot, but was then a resident and citizen of the state of Massachusetts; because he left no estate to be administered in said county of Penobscot, and no estate of said William Shaw was afterwards found in said county.

Fourth. Because the said probate court had no jurisdiction to appoint an administrator, as prayed for in said petition of said S. & J. Adams and Belden, there being no property to be administered, nor any debts to be paid by any administrator appointed under said petition.

The view taken by the court of the third and fourth reasons renders the first and second reasons immaterial.

The facts which came under consideration by the court and appear in the reported testimony are as follows:

William Shaw died August 31, 1882, being then a resident of Boston, and a partner of the firm of F. Shaw & Bros., whose domicile was Boston, comprised of Fayette Shaw, of Newtonville, Mass.; Brackley Shaw, of Montreal, Canada; and William Shaw, of Boston; that he left no private or individual personal property in Penobscot county, and no real estate there except such as was paid for with partnership funds, held for partnership purposes, and stood upon the partnership books as partnership property.

The partnership articles provided, that the partners should be equal owners in common of all the estate then standing, or which should be hereafter put, during the continuance of the partnership, in the names of the firm, or of all or any of the partners, bought or acquired for partnership purposes and standing upon the books as partnership property; that profits and losses should be shared equally, and upon a settlement of the partnership estate the whole property be treated as if it were personal property.

"In the event of the death of one or more of the parties, no objection being made in writing by the legal representatives of the deceased partner," the survivors were to be "allowed the term of five years, in, or within which, to continue and close the business of this copartnership." The personal representatives of a deceased partner during this time were to be allowed free access to the books, accounts, etc., and during this five years or any part thereof, "at the option of the survivors or survivor, the whole interest of such deceased partner or partners, or such part of his or their interest as to the survivors or survivor may from time to time seem best, shall remain in the business and subject to all the risks thereof," etc.

Walter D. Shaw, and Ferdinand A. Wyman were appointed and qualified as administrators of the estate of William Shaw, in Suffolk county, Mass., Sept. 11, 1882, and have acted as such. Wyman testifies that he, as administrator, made search for nearly a year to find property of William Shaw with which to pay debts,

and could find nothing save the equity to a house in Boston, and that all the property in Penobscot county belonged to F. Shaw & Bros., and that these lands were all of them included by the committee of creditors, appointed at the time of the failure, in their schedule of the property of F. Shaw & Bros., annexed to their report. The administrators of William Shaw, after careful deliberation, determined not to terminate the partnership articles, and the surviving partners exercised their right to retain all the property in the firm. The property accordingly all remained in the firm, and the business was carried on under the partnership articles after the death of William Shaw, until the firm failed and made an assignment to Ferdinand A. Wyman for the benefit of its creditors, July 28, 1883. The assignment was a general assignment for all the creditors and contained no preferences. The great mass of the creditors accepted the assignment, far more in amount than sufficient to absorb the entire assets, and the legal representatives of William Shaw assented to it. The voluntary assignee, Wyman, took possession of all the property, including the real estate standing in William Shaw's name, he being then also personal representative of William Shaw.

A suit in equity was thereafter brought by the Globe National Bank of Boston in the supreme judicial court of Suffolk county, Massachusetts, in behalf of all the creditors, against the surviving partners and their assignee, to determine who were the proper parties to share in the assigned fund, and to secure a proper distribution thereof. Notices were given to all the creditors of these proceedings, and opportunity given them, if they should desire, to oppose the granting of the prayers of the bill. During the progress of that suit, a composition was effected by the debtors in the court of insolvency, for Middlesex county, Mass., with the great mass of their creditors. By decree of the supreme judicial court, Wyman the voluntary assignee, was authorized to sell the balance of the property (excepting cash and bonds) for eight hundred thousand dollars, and to pay over the money to the court of insolvency, to be used for the purposes of the composition. In accordance with that decree he sold the property to Charles W. Clement, giving him a deed of the property which includes these

lands. The said Clement purchased the property for certain parties, who advanced the money to carry out the composition, taking as security a declaration of trust from him upon all this property. Thereafter, Clement brought a bill in equity in the supreme judicial court for Penobscot county, against the widow and heirs of William Shaw, to obtain the legal title to these lands. By decree, in that suit, it was ordered that this real estate should be conveyed to said Clement, and a deed thereof was accordingly given him by a special master duly appointed therefor.

Several parcels of this land have since been sold by claimant to appellants Llewellyn Powers, and Lloyd B. Clark. It is also admitted that said Walter D. Shaw, and Ferdinand A. Wyman resigned as administrators in Massachusetts, Nov. 26, 1883, and Lloyd B. Clark, of Springfield, Mass., was appointed in their stead.

*C. P. Stetson, S. Hoar, G. W. Morse and W. Webster*, for appellants, Shaw and Powers.

*A. W. Paine*, for appellant, Clark.

The entire issues involved may be summed up as follows: Partnership real estate of a foreign firm, situated in Maine, and held in trust by a deceased non-resident partner, the firm itself having been continued in existence after his death, by virtue of a stipulation in the articles, does not constitute assets for an administration of such deceased partner, the same having been fully administered by the firm under voluntary assignment and decree of a court of equity.

Petitioners having proved their claims, and received dividends are estopped from prosecuting this petition. *Chaffee* v. *Bank*, 71 Maine, 514, 526, 527, 528; *Bodley* v. *Goodrich*, 7 How. 276; *Adlum* v. *Yard*, 1 Rawle, 163; *Rapalee* v. *Stewart*, 27 N. Y. 310.

Appellants are parties "aggrieved," and have right to appeal. *Bancroft* v. *Andrews*, 6 Cush. 493, 496; *Thompson* v. *White*, 45 Maine, 445; *Lunt* v. *Adams*, 39 Id. 392, 395; *Paine* v. *Goodwin*, 56 Ib. 411, 413; *Bates* v. *Sargent*, 51 Id. 423, 425; *Smith* v. *Bradstreet*, 16 Pick. 264, 265; *Bryant* v. *Allen*, 6 N. H.; *Bush* v. *Clark*, 127 Mass. 111; *Stebbins* v. *Lathrop*, 4 Pick. 33, 41; *Mowry*

v. *Robinson*, 12 R. I. 152; *Smith* v. *Sherman*, 4 Cush. 408, 411; *Wiggin* v. *Swett*, 6 Met. 194, 197.

The probate court had no jurisdiction, because there was no estate to be administered. The court must be satisfied that there are assets, or it cannot appoint an administrator. *Fairfield* v. *Gullifer*, 49 Maine, 360; *Fowle* v. *Coe*, 63 Id. 245, 248, 249; R. S., c. 63, § 6, c. 64, § 1; *Bowdoin* v. *Holland*, 10 Cush. 17, 19; *Pinney* v. *McGregory*, 102 Mass. 189; *Crosby* v. *Leavitt*, 4 Allen, 410; *Emery* v. *Hildreth*, 2 Gray, 228; *Bean* v. *Bumpus*, 22 Maine, 549; *Gross* v. *Howard*, 52 Id. 192.

Trust property is not "estate to be administered." *Thompson* v. *White, supra; Trecothick* v. *Austin*, 4 Mason, 16, 29; *United States* v. *Cutts*, 1 Sumn. 133; *Johnson* v. *Ames*, 11 Pick. 173; *Thompson* v. *Thompson*, 5 Bradford (N. Y. Surrogate); *Camp* v. *Fraser*, 4 Demarest, 212, (N. Y. Surrogate); *Crosby* v. *Leavitt*, 4 Allen, 410.

Partnership property is trust property. 1 Wash. Real Est. 574; *Crooker* v. *Crooker*, 46 Maine, 250; *Buffum* v. *Buffum*, 49 Id. 108; *Burnside* v. *Merrick*, 4 Met. 537; *Dyer* v. *Clark*, 5 Met. 562; *Smith* v. *Jackson*, 2 Edw. Ch. 28; *Shanks* v. *Klein*, 104 U. S. Sup. Ct. 18; *Wilcox* v. *Wilcox*, 13 Allen, 252.

*Cook* v. *Lewis*, and *Putman* v. *Parker*, relied on by appellees, are cases of partnerships without stipulations for continuance, and necessarily dissolved on the death of the partner.

Partnership creditors have no lien on partnership effects, until acquired by legal process. 3 Pars. Con. § 282, 7th ed. 298, note 1. *Emerson* v. *Senter*, 118 U. S. Sup. Ct. 3; *Huiskamp* v. *Moline Wagon Co.*, 121 Id. 310, 323.

The provision in the partnership articles preserved the partnership from dissolution at the death of William Shaw. *Burwell* v. *Mandeville*, 2 How. 560; *Smith* v. *Ayer*, 101 U. S. Sup. Ct. 320; *Jones* v. *Walker*, 103 Id. 444; *Tillotson* v. *Tillotson*, 34 Conn. 335, (by provisions in will); *Phillips* v. *Blatchford*, 137 Mass. 510; *Stanwood* v. *Owens*, 14 Gray, 195; *Blodgett* v. *American Bank*, 49 Conn. 9 (by partnership articles); 2 Bouv. Inst. § 1499; 2 Lindley on Part. § 1044; 3 Kent's Com. 25 note c.; Collyer on Part. §§ 16, 167; *Crawshay* v. *Collins*, 15 Ves. 218, 228; *Scholefield* v. *Eichelberger*, 7 Pet. 586, 594.

R. S., c. 69 not intended to dissolve either domestic or foreign partnerships; it simply provides a way of administration after dissolution. *Nave* v. *Sturges*, 5 Mo. App. 557; *Edwards* v. *Thomas*, 2 Id. 282, 285; S. C. 66 Mo. 468; *Farmers and Traders' Sav. Ins.* v. *Garesche*, 12 Mo. App. 584; *Exchange Bank* v. *Tracy*, 77 Mo. 594, 599; c. 1, Act 3, R. S. of Mo.

Statute does not apply to foreign partnerships.    *Chaffee* v. *Bank*, 71 Maine, 514, 524, 528 (foreign voluntary assignment); *Matherson* v. *Wilkinson*, 79 Maine, 159 (foreign contract); *Baldwin* v. *Hale*, 1 Wall. 223; *Bancher* v. *Fisk*, 33 Maine, 316; *Felch* v. *Bugbee*, 48 Id. 9; *Palmer* v. *Goodwin*, 32 Id. 535; *Hills* v. *Carlton*, 74 Id. 156, (insolvent laws).

That these lands are not "estate to be administered" is *res adjudicata* by the decree in *Clement* v. *Amy V. Shaw*. This decree was a judicial finding that they were trust property, rightfully administered by the survivors under the partnership articles, and by which an individual administrator is barred, he having no interest. *Manly* v. *Kidd*, 33 Miss. 148; *Hardway* v. *Drummond*, 27 Ga. 223. A sale by him, under license, would be void. *Dyer* v. *Clark*, and *Smith* v. *Jackson*, *supra*.

Creditors bound by decree in Globe National Bank v. Wyman, and Clement v. Shaw. *Stevenson* v. *Austin*, 3 Met. 474; *Smith* v. *Williams*, 116 Mass. 510; *Hall* v. *Williams*, 1 Fairf. 278; *Sweet* v. *Brackley*, 53 Maine, 346; *Granger* v. *Clark*, 22 Id. 128; 1 Daniel Ch. Pr., 5 Am. Ed. *281, 283, 285; Story Eq. Pl. §§ 173, 180; *May* v. *Mercer Co.*, 30 Fed. Rep. 246; *Cannon* v. *Seveno*, 78 Maine, 307; *Treat* v. *Treat*, 80 Id. 156.

The personal representatives of deceased partner may settle the partnership affairs with the survivors.    Pars. on Part. § 511; Story on Part. § 347, note 1; *Sage* v. *Woodin*, 66 N. Y. 578.

The appointment of Walter D. Shaw, administrator, without the notice required by statute, is not conclusive upon the question of assets. *Gross* v. *Howard*, 52 Maine, 192; *Brigham* v. *Fayerweather*, 140 Mass. 411. Is not binding on the surviving partners, or their assignee. *Moore* v. *Philbrick*, 32 Maine, 102, 103; *Jenks* v. *Howland*, 3 Gray, 536. No evidence of title, not having qualified. *Phillips* v. *Smoot*, 1 Mackey (D. C.) 478. Not appointed

until he gives bond. *O'Neal* v. *Tisdale*, 12 Tex. 40; *Feltz* v. *Clark*, 4 Humph. (Tenn.) 79. Failing to qualify is *prima facie* evidence of refusal. *Uldrick* v. *Simpson*, 1 S. C. 283; and cannot appeal from a decree appointing some one else. *Howard* v. *Morrill*, 42 Ga. 397.

As it is agreed, in the report in this case, that William Shaw, at the time of his death, was not a resident of the State of Maine, the issue here is, whether there are, at the present time, assets of William Shaw's estate to be administered within the county of Penobscot. This cannot be held to be *res adjudicata* under the decree appointing Walter D. Shaw,—because the existence of assets in the county of Penobscot in 1887 could not have been an issue in a judicial proceeding in 1882. There may have been assets in Penobscot county in 1882, and none in 1887. But, furthermore, the existence of assets of William Shaw's estate within the county of Penobscot, in 1882, was not a fact necessary to the validity of the decree appointing Walter D. Shaw. The court, in that case, may have found, notwithstanding the agreement of the parties in this case, that William Shaw, at the time of his death, was a resident of Penobscot county, and left assets amounting to twenty dollars somewhere, not in the county. Such a finding would have been sufficient for the validity of that decree. (R S., c. 63, § 6, and c. 64, § 1). The agreement of the parties here cannot affect the issues or findings of the court in that suit. It does not appear by the decree appointing Walter D. Shaw on which of these grounds the court assumed jurisdiction. The decree then, did not necessarily involve the finding of assets in the county of Penobscot in 1882, or at any period of time.

To be a bar to future proceedings, it must appear that the former judgment necessarily involved the determination of the same fact, to prove or disprove which it is pleaded or introduced in evidence. It is not enough that the question was one of the issues in the former suit. It must also appear to have been precisely determined. *Foster* v. *Busteed*, 100 Mass. 409, 411; *Burlen* v. *Shannon*, 99 Mass. 200; *Lea* v. *Lea*, 99 Mass. 493; *Littlefield* v. *Huntress*, 106 Mass. 121; *Stapleton* v. *Dee*, 132 Mass. 279; *Hill* v.

*Morse*, 61 Maine, 541, in which Peters, J., approves doctrine of *Burlen* v. *Shannon*; *Tracy* v. *Merrill*, 103 Mass. 280.

The administration sought for is ancillary, and must inure for equal benefit of all creditors. *Dawes* v. *Head*, 3 Pick. 128, 141, 142.

There would be a singular difference in the two administrations of the partnership property in this case, viz: The surviving partners would administer all the property, outside of Maine, as of July 28, 1883, the day of the dissolution of the firm, for the benefit of all the firm creditors, both those prior and those subsequent to the death of William Shaw. The probate court in Maine, however, would ignore entirely all debts contracted since his death, and pay only *pro rata* dividends based upon the entire property to creditors who were such at the death of William Shaw; but what they would do with the balance it is impossible to tell. It could not be remitted to the individual administrator, in Boston, for he has nothing to do with the administration of partnership estate. It could not be remitted to the surviving partners, for then it would be distributed partly amongst subsequent creditors.

Voluntary assignments for benefit of creditors, if accepted by sufficient creditors to absorb the assets, and not tainted with fraud, are valid against non-assenting creditors, and can only be avoided by an assignee in insolvency. *Bank* v. *Eagle Sugar Refinery*, 109 Mass. 38; *May* v. *Wannemacher*, 111 Ib. 202; *Train* v. *Kendall*, 137 Id. 366; *Hapgood* v. *Means*, 19 Pick. 105; *Boese* v. *King*, 108 U. S. Sup. Ct. 379; *Mayer* v. *Hellman*, 91 Ib. 496; *Reed* v. *McIntyre*, 98 Id. 507; *Livermore* v. *Jenckes*, 21 How. 126; *Brashear* v. *West*, 7 Pet. 608; *Atherton* v. *Ives*, 20 Fed. Rep. 894; *Ingraham* v. *Wheeler*, 6 Conn. 277; *Frazier* v. *Fredericks*, 4 Zab. (34 N. J. Law) 163, 166; *Speed* v. *May*, 17 Pa. St. 91; *Chaffee* v. *Bank*, 71 Maine, 514; *Ockerman* v. *Cross*, 54 N. Y. 29.

Surviving partners may, by an assignment in all respects equitable and just, assign the firm property for the equal benefit of all the creditors. *Hoyt* v. *Sprague*, 103 U. S. Sup. Ct. 613; *White* v. *Union Ins. Co.*, 1 Nott & McCord, 556; *Galt* v. *Gallaud*, 7 Leigh, 594; *Loeschick* v. *Hatfield*, 5 Robt. 26; *Loeschick* v. *Addison*, 4 Abb. Pr., new series, 210, affirmed 51 N. Y. 960; *Wilson* v. *McConnell*, 9 Rich. Eq. 520.

. This right rests upon principles laid down in *Dwinel* v. *Stone,* 30 Maine, 384, 386; *Knowlton* v. *Reed,* 38 Id. 246; and *French* v. *Lovejoy,* 12 N. H. 458, 461.

*E. Walker, Barker,* *Vose and Barker,* with him, for appellees.

In probate proceedings, the appointment of an administrator, by a judge of probate, is conclusive unless appealed from. *Clark* v. *Pishon,* 31 Maine, 506.

Jurisdiction was assumed in the appointment of Walter D. Shaw, and not appealed from, though he failed to qualify by giving the required bond. The question of jurisdiction, therefore, is not open in the probate court, though it might be called in question collaterally in a court of common law.

None of the appellants except Clark have the right of appeal, because the decree does not, *ipso facto,* operate directly or necessarily upon their property or their rights, and therefore their appeals should be dismissed without considering the reasons therefor by this court sitting as the supreme court of probate. *Smith* v. *Sherman,* 4 Cush. 408; *Veazie Bank* v. *Young,* 53 Maine, 555; *Deering* v. *Adams,* 34 Maine, 41; *Smith* v. *Bradstreet,* 16 Pick. 264; *Wiggin* v. *Swett,* 6 Met. 194; *Bryant* v. *Allen,* 6 N. H. 116; *Lewis* v. *Bolitho,* 6 Gray, 137; *Ayer* v. *Breed,* 110 Mass. 548; *Swan* v. *Picquet,* 3 Pick. 443; *Downing* v. *Porter,* 9 Mass. 386.

The appellants are limited to their reasons of appeal, and no other question is open to them except what is stated in their reasons; all other things are presumed to be correct; so that we have no occasion to consider any question not stated in the reasons. *Gilman* v. *Gilman,* 53 Maine, 184, 188; *Boynton* v. *Dyer,* 18 Pick. 1, 4.

And a party must be interested in probate proceedings, and not adverse to them, to have the right of appeal; if his interests are such as to be determinable only by a court of common law, or are adverse to the estate and to the rights of the creditors of the estate, he has no right of appeal as he is not aggrieved. *Lewis* v. *Bolitho, supra.*

Clark has the right of appeal only in his representative capacity as administrator of the estate of William Shaw, as his reasons given in his individual capacity stand upon the same ground as

those of the other appellants. Therefore, to show that he is aggrieved, he must show that the decree necessarily and directly operates injuriously upon the estate of the deceased, and upon the rights of the creditors of the estate which he represents. This he has not shown and is not aggrieved. *Smith* v. *Sherman, supra; Lewis* v. *Bolitho, supra.*

If the reasons of appeal were all true to the letter, it would follow that no one of the appellants is aggrieved, as if there is no property to be administered, the appointment of an administrator could affect the rights of no one ; it is only where there is property to administer, that any one can be aggrieved. Therefore, their appeals should be dismissed without regard to their reasons.

The whole partnership property is subject to administration. The title and interest of a deceased partner in partnership property, is such estate as is required by law to be inventoried and administered upon. And William Shaw had a large interest in such property in Maine. R. S., c. 69, §§ 1 and 2 ; *Bass* v. *Emery,* 74 Maine, 338 ; *Hill* v. *Treat,* 67 Maine, 501 ; *Cook* v. *Lewis,* 36 Maine, 340.

There must first be an administrator upon the estate of the deceased, before there can be one on the partnership assets, as he has the first duty to perform in relation to the partnership property. R. S., c. 69, § 1.

The judge of probate has jurisdiction if a non-resident deceased leaves personal estate in Maine of twenty dollars in value, or real estate to that value, and owes debts to that amount, and any portion of such estate is in his county, however small. R. S., c. 63, §§ 6 and 7 ; c. 64, § 1.

And the judge first taking jurisdiction, holds it over the property in all the counties throughout. R. S., c. 63, § 7.

There is no survivorship in partnership matters, and the share of the deceased partner, both at law and in equity, descends to his heirs and legal representatives, subject to a trust for the payment of partnership debts. *Crooker* v. *Crooker,* 46 Maine, 250, and cases there cited. The estate of the deceased in land was that of a tenant in common with the survivors. R. S., c. 73, § 7.

Each partner, while living, holds his share of the title to the

partnership property, as tenant in common, subject to a trust in favor of partnership creditors; and he cannot dispose of it so as to defeat that trust, without committing a fraud, or being made accountable therefor. And upon the death of a partner his share of the real estate descends to his heirs, subject to the same trust. *Crooker* v. *Crooker, supra,* and cases there cited. *Burnside* v. *Merrick,* 4 Met. 537, 541. And the trust cannot be defeated by any post-mortem conveyance. R. S., c. 71, § 23.

And a partner cannot authorize any other person to convey, after his death, the property which he holds subject to such trust, so as to defeat such trust, (which he could not do while living, without committing a fraud). Therefore, any supposed authority for that purpose in the articles of copartnership, is void.

The provisions in the articles of copartnership, and the assignment to Wyman, as against the rights of creditors in this state, are void by the positive laws of our state, when brought in conflict with them. *DeSobry* v. *DeLaistre,* 3 Am. Dec. 535; *Smith* v. *Smith,* 3 Am. Dec. 410; *Soul* v. *His creditors,* 16 Am. Dec. 212; *Marsh* v. *Putman,* 3 Gray, 551, 567; *Fox* v. *Adams,* 5 Greenl. 245; *Felch* v. *Bugbee,* 48 Maine, 9.

The conveyances to Wyman and to Clement show, upon their face, that those conveyances were made in fraud of the creditors, and the record thereof is notice to all who should purchase the property of them.

The courts in Mass. could confer no authority upon Wyman, in relation to property in Maine. They could only act *in personam,* and require him to do what he might do voluntarily without the order of such courts. *Fowle* v. *Coe,* 63 Maine, 245; *Lovejoy* v. *Albee,* 33 Maine, 414.

The decree of the supreme court of Maine, and conveyance by a special master in pursuance thereof, only conveyed to Clement the right, title and interest, of the widow and heirs of William Shaw to real estate, which right, title and interest in them, is subject to the trust under which William Shaw held it in favor of creditors, and Clement holds it subject to the same trust, as also his grantees with the record notice.

And a conveyance of the right, title and interest of the heirs,

only carries their interest in the surplus, after the debts are paid. *Burnside* v. *Merrick, supra.*

All the real estate of which William Shaw held the title at his decease, situate in Maine, is subject to be inventoried and administered upon; as Clement had acquired only the rights and title of the heirs, and has only the same rights in proceedings in probate courts. R. S., c. 63, § 29, c. 65, § 13, and c. 71, § 23.

The real estate purchased with partnership funds of which William Shaw held the legal title, was held by him in trust to pay partnership debts, and could have been sold by him in his lifetime for that purpose, he applying the proceeds to the payment of such debts, which would have discharged the land of the trust. It follows that his administrator under a license from court could do the same thing. But only a partnership administrator could reach the title of the survivors for that purpose; and unless the record title showed that it was purchased with partnership funds for partnership purposes, he might have to resort to a bill in equity to do it. *Burnside* v. *Merrick, supra; Buffum* v. *Buffum,* 49 Maine, 108, and cases there cited.

It is necessary for the administrator to sell only so much of the property as is needed to pay the few outstanding debts against the firm, leaving the balance in the hands of Clement, as he has acquired the title of the survivors and heirs of William Shaw, which title is subject to those debts, and that much the creditors are entitled to have out of the property by the laws of our State, in spite of the articles of copartnership, and all the conveyances that have been made. And it is for that purpose that these proceedings are prosecuted.

The articles of copartnership, and the assignment to Wyman by the survivors, so far as they are in conflict with the positive provisions of our statutes, and the rights of creditors who are citizens of Maine are void—the *lex loci rei sitæ* must control, and our own citizens should be protected thereby whatever may be the law in other States. *Fletcher* v. *Sanders,* 32 Am. Rep. 96.

R. S., c. 71, § 23, provides that lands of which deceased died seized, etc., are liable to sale for payment of debts under any license granted under this chapter, and any deed executed and

recorded in due form of law for adequate consideration, in pursuance of such license, is effectual to pass to the purchaser all the estate, right, title and interest in the granted premises which the deceased, &c., might convey by a like deed, if living and not incapacitated; which creates a statute lien upon the real estate of a deceased person for payment of his debts, paramount to any claim made upon it or conveyance by any person after his death.

There is also a lien at common law. *Burnside* v. *Merrick*, *supra*, 543.

The contract of copartnership and the assignment to Wyman are in direct conflict with R. S., c. 69, and c. 71, § 23, and are void, and all attempted conveyances made in pursuance of such contract and assignment, and authority claimed under them, are void as to property in Maine.

Our citizens as creditors have a lien at common law and a special lien by R. S., c. 71, § 23, upon the real estate of the deceased for payment of their debts which cannot be defeated by any post-mortem conveyance.

DANFORTH, J. These three cases are appeals, by as many different persons, from the same decree of the probate court for the county of Penobscot appointing Elliot Walker administrator on the estate of William Shaw.

The petition alleges that Shaw was a citizen of Massachusetts; that he died "August 31, 1882 intestate, seized and possessed of personal estate in said county, exceeding twenty dollars in value, which ought to be administered according to law; that said deceased died leaving real estate in said county of more than twenty dollars in value, and owing debts to more than the amount of twenty dollars, which are still unpaid."

Among the reasons of appeal there is one in each case, and the principal one, which directly denies the allegations in the petition so far as they relate to property, and thus is raised a distinct issue upon that point.

There are, however, some preliminary questions raised to be first disposed of.

It is claimed that the appellants are not, in a legal sense, so aggrieved as to entitle them to a hearing. To give them this

right it is claimed that the decree must directly and unfavorably affect their rights of property, or interests; that the court of probate is not, but a common law court is, the proper tribunal to settle titles to real estate, and numerous cases are cited to sustain this view. No doubt, this as a general statement of the law is correct and the cases cited are sound law, under the facts upon which they rest. But they do not apply here. In this case, the real estate relied upon as authority for granting the petition is claimed, not by an independent or adverse title, but by a title traced directly to the intestate, and acquired through his representatives, by what they claim to be a legal and valid process. If it should prove so there will be no ground for granting the petition. The title to this real estate is therefore in issue and the court must pass upon it in order to settle the question in issue. A very considerable portion of the argument for the petitioners, is to show that this property is now in a condition to be administered upon as the property of the deceased. If the decree stands it will be an authority for the administrator to administer the property in question so far as it may be necessary. Whatever rights the appellants might have in a court of law, the decree, if it has no other effect than to send the parties to expensive litigation, will be sufficiently direct in its effect upon the title to authorize these appeals. *Allen* v. *Smith*, 80 Maine, 486; *Bancroft* v. *Andrews*, 6 Cush. 493, 496; *Paine* v. *Goodwin*, 56 Maine, 413; *Bates* v. *Sargent*, 51 Maine, 425; R. S., c. 63, § 29.

The case shows that Clark is administrator at the intestate's last place of residence. As such, his right of appeal is beyond question. *Wiggins* v. *Swett*, 6 Met. 197; *Smith* v. *Sherman*, 4 Cush. 411. The widow, having an interest in the estate, would have the same right of appeal as the administrator.

Another question, raised in this connection, is that the reasons of appeal alleging a want of jurisdiction in the probate court, are *felo de se* and the appeal should be dismissed without further consideration. This would clearly be the result if the want of jurisdiction appeared upon the record. *White* v. *Riggs*, 27 Maine, 114; *Osgood* v. *Thurston*, 23 Pick. 110. Possibly, the same result might follow if an absolute want of jurisdiction should

appear on investigation. It is quite evident that there would be no propriety in this court's affirming or reversing a void decree. Still the effect would be the same as a reversal. If the appeal is dismissed, for want of jurisdiction, it must in effect be a declaration of the nullity of the decree, and would leave no basis for any authority in the administrator appointed. But the cases cited do not apply to this case. In *Bank* v. *Young*, 53 Maine, 555, there are some remarks tending to show that the principle might be applicable in a case like this. But they are dicta only and the dismissal of the appeal rests upon a different ground. In cases like this, jurisdiction of the subject matter is given by the statute. Whether an administrator shall be appointed, is determinable by the court and the result depends upon the facts as they shall be found. Moreover, the statute makes such finding conclusive and forbids any inquiry into the question of jurisdiction, "except in cases of fraud, so far as it depends * * * upon the locality, or amount of property, * * in any proceeding whatever, except on *appeal* from the probate court in the original case, or when the want of jurisdiction appears on the same record." This seems tantamount to a direct grant of the right of appeal. R. S., c. 63, § 7.

Another preliminary objection is that the appointment of Walter D. Shaw was an adjudication of the question now at issue and conclusive upon all parties. The case shows that he was appointed upon his own petition in December 1882. That appointment was upon the condition of his giving a bond which he never gave. He never entered, or attempted to enter upon the duties of his office. He therefore in effect declined to accept the office, and the appointment was the same as if it had never been made. If he had qualified, the decree would have been conclusive as to his authority in all proceedings in which he was a party but no further. He is not now a party. At the time of his appointment, these appellants were not, nor were they in a condition, to be parties. Hence, though the decree might have become conclusive as to the title to the office, it would not have been conclusive as against these parties as to the existence of assets even at that time. *Brigham* v. *Fayerweather*, 140 Mass. 411.

Besides, the residence of the deceased is not in issue here, but the location of his property. There may have been assets at one time and not at another. If he had left assets at his decease and all had been removed, or legally disposed of, before the date of this petition, it would furnish no reason for the appointment of an administrator at this time. Another pertinent suggestion is, that we find in the decree no allegation of any assets, or of the truth of any allegations in the petition, nor does the petition show any real estate, the existence of which seems to be the question at issue here.

This brings us to the main question in issue in this case.

The petition alleges in substance that William Shaw, a resident of Massachusetts, died August 31, 1882 seized and possessed of personal and real estate of the requisite value which ought to be administered upon, and asks that Elliot Walker be appointed "administrator of said estate." One of the reasons of appeal is, in effect, that he left no such property.

The authority of the probate court to grant administration is found in R. S., c. 63, § 6, and includes "the estates of all deceased persons, who at the time of their death, were inhabitants or residents of his county, or who, not being residents of the state, died leaving estate to be administered in his county, or whose estate is afterwards found therein." The limit of this authority is found in R. S., c. 64, § 1. "No administration shall be granted on the estate of any intestate deceased person, unless it appears to the judge that he left personal estate to the value of at least twenty dollars, or owed debts to that amount, and left real estate of that value."

Hence, in order to grant the prayer of this petition it must affirmatively appear to the court, that at the date of the petition personal property of the deceased was found in the county of Penobscot, of the value of twenty dollars, or that he owed twenty dollars, and left in that county real estate to that amount; and that his interest in it was such, that it was liable to be administered upon as his. In other words that the property both real and personal must be assets of the deceased, liable for his individual debts, or to be distributed among his widow and heirs,—for

an administrator as such, can do nothing else. If the deceased held the property in trust, it might indeed go to his representatives, not to be administered upon, but to be disposed of under the trust. In one case, the court of probate would have jurisdiction, in the other a court of equity. *Trecothick* v. *Austin*, 4 Mason, 16.

All the material facts in this case are unquestioned. It appears that the deceased with his two brothers, neither of whom were residents of this state, had entered into a copartnership for the purpose of doing an extensive business in this, as well as in several other states and Canada. The firm had occasion for a large amount of personal and real estate, were the owners of both kinds of property and a considerable portion of each was in the county of Penobscot at the death of the deceased partner. There is no proof that the deceased had any personal property other than that which belonged to the partnership. As that has been disposed of before this petition was filed, and as the result has shown was insufficient to pay the partnership debts, the deceased had no such interest in that as could be considered as bearing upon the question presented by this petition. Even if the property could now be found, in the county and identified, he had no such interest in it as would authorize an administrator to administer upon it, as his individual estate, it being insufficient to pay the company debts.

The real estate is somewhat differently situated. The record title, to some or all of that, stands in the name of the deceased. But the facts show that it was bought with partnership funds for the company, and to be used for company purposes. By well settled law it must be considered, that, though the deceased held the legal title he held it in trust, not for the creditors alone, or specially, but for the firm. *Crooker* v. *Crooker*, 46 Maine, 250; *Buffum* v. *Buffum*, 49 Maine, 108. This trust is also distinctly declared in the articles of copartnership. It also appears that all this real, as well as the personal estate, is insufficient to pay the partnership debts, and except this partnership property the deceased had no other, real or personal, at the time of his death, in the county of Penobscot and none has been found since. He

clearly then had none which could, or can be administered upon as his private or individual assets, none which an administrator could legally appropriate to the payment of his private debts, or distribute to his heirs. This would seem to be decisive of this case.

But while it is conceded that an administrator must first be appointed for the deceased member of the firm, it is claimed here that it should be done, because there are partnership assets to be administered upon. But assuming it to be true that there are partnership assets, the result claimed by no means follows. The fact of partnership assets is no legal reason for appointing an administrator. On the other hand, the express terms of the statute from which the probate court gets all its authority, excludes it. The appointing power is the same whether the deceased was a member of a firm or otherwise. The administrator is not appointed for, or with reference to any firm, and if the duty of settling the partnership affairs devolves upon him it is only as an incident of his office, and after the surviving partner has refused to give the required bond. The only power the court has to appoint rests upon proof of individual assets.

The fact that the deceased held the legal title incumbered, as it is, with a trust which swallows up the whole, affords no proof of assets, for after the trust is satisfied there is nothing left for the individual. The trust must be disposed of in another way as held in *Crosby* v. *Leavitt*, 4 Allen, 410. The title would go to the legal representatives, incumbered with the trust, and not as assets to be administered upon. This, if not self evident is, abundantly sustained by the authorities cited in the argument.

But further, even were it competent for the court to consider any evidence of partnership assets, as bearing upon the question at issue here, there is not only a failure to show any such assets now existing, but from the case it does appear affirmatively that whatever the firm had, at the death of William, have been long since disposed of and that before the date of this petition.

In the articles of copartnership, it was agreed, that in case of the death of one or more of the members of the firm, "the survivors or survivor shall be allowed the term of five years, in, or within

which, to continue and close the business of this copartnership." This agreement gave the survivors the same power to continue and manage the business of the firm, as when all were living, including the property interest which the deceased member had in it, and making that property liable to debts subsequently contracted, as well as those then existing. *Burwell* v. *Mandeville*, 2 How. 573, 576 ; and the numerous cases cited in the argument. That such is the well settled general rule of law cannot now be doubted.

But it is claimed that, in this state, such an agreement is void because it conflicts with the express provisions of the statute, c. 69; R. S., and with the rights of creditors. But this contract was made by parties, not residents of this state, and therefore not amenable to its statute laws. The contract was therefore binding upon the parties and, as such, would be enforced in this state unless contrary to its laws, or public policy. *Felch* v. *Bugbee*, 48 Maine, 9. It contravenes no public policy nor any statute of the state. It takes away none of the rights of creditors ; was not intended, nor did it have the effect to hinder, or delay them, in the slightest degree. The statute gives them no special lien upon the property until one was created by legal process, and it was open to attachment after the agreement went into effect as well as before. R. S., c. 71, § 23, makes certain lands of the deceased liable to be sold for the payment of debts, and doubtless the proper and perhaps the only way for the creditor to avail himself of this provision is through an administration and under a license. But the enumeration of the different description of lands liable, omits such as may be holden in trust and the inference from this is, that they were intended to be excluded.

The only ground of conflict with chapter 69 must be found in § 1 if anywhere, which provides that the administrator of a deceased member of a firm "shall include in the inventory the property of the partnership," and in a certain event administer it. But this offers no legal proof that an administrator is needed for the deceased partner and furnishes no reason why one should be appointed. But if that provision has any reference to a foreign firm, it must have a reasonable construction. It contemplates a

dissolution. If there is no such administrator it clearly cannot be enforced. It is quite as evident that if there is no dissolution, it cannot be enforced. The use of the words administrator with the act of administration in the probate court, indicates that there must first be a dissolution, a closing up, a cessation of business. The law did not and could not intend to interfere with a living partnership and stop its business. As said by Story, J., in *Burwell* v. *Mandeville, supra*, p. 576. "By the general rule of law, every partnership is dissolved by the death of one of the partners. It is true, that it is competent for the partners to provide by agreement for the continuance of the partnership after such death ; but then it takes place by virtue of such agreement only, as the act of the parties, and not by mere operation of law." So here, without the agreement, the partnership would have followed the general rule of law and the dissolution would have taken place at the death of the member. But under the agreement, the firm is continued, by the act of the parties and the operation of the statute is postponed, at least until a dissolution does take place. This can be no violation of the statute, for in addition to the reasons already given, it may be suggested that no time is fixed in the statute when the administrator shall take possession and the inference is, if necessary at all, it should be after a dissolution of the firm.

In this case, such a possession is not necessary, nor can it legally be taken, for by the very act of dissolution all the partnership property was disposed of and the creditors provided for so far as it was possible to do so. The assignment was necessarily a dissolution of the firm. By that assignment, the creditors whether they had a lien or not, took all the property there was. They could have had no more under an administration. The creditors therefore have no reason to complain. It is a general assignment, making no preference as to creditors. It conflicts with no statute or policy of the state. The former assignment law of this state has been repealed. *Smith* v. *Sullivan*, 71 Maine, 150. And it cannot conflict with the insolvent law because it places no obstacle in the way of enforcing that. If the parties were within the jurisdiction of this state, the insolvent law could be

invoked the same after as before the assignment. The only real objection to it seems to be in effect, that it gives no priority to the creditors of this state. But why should it? None of the statutes referred to, gives such a preference, not even that under which an administration is claimed. The insolvent law, if that could have and had been invoked, would not have allowed it. During the continuance of the partnership, the firm could have sold any portion of their property, for the payment of debts either in or out of the state. If they could have sold in parts for that purpose they could sell it as a whole for the same purpose. *Train* v. *Kendall*, 137 Mass. 366 ; *Boise* v. *King*, 108 U. S. Sup. Ct. 379, and numerous cases cited by counsel. Upon the propriety of giving a preference, to creditors within the state, to a priority of payment from the state property, we refer to the remarks of Parker, C. J., in *Davis, Judge* v. *Head*, 3 Pick. 128, beginning on page 143. These remarks, though not necessary to the decision in that case, are entitled to great consideration and certainly to no less, under the circumstances, developed in the case at bar.

That this assignment was valid in Massachusetts appears from the case of the *Globe Bank* v. *Wyman & als.* the records of which are made a part of this case. It has been confirmed by the decree in *Clement* v. *Shaw & als.* heard in Penobscot county, under which all the partnership real estate in this state has been disposed of in conformity with the rights of all parties. Whether it will defeat the attachments of resident creditors we do not now deem it necessary to decide.

*Decree of probate court reversed.*

PETERS, C. J., LIBBEY, EMERY and FOSTER, JJ., concurred.

HASKELL, J., having been of counsel did not sit.